**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

**CIVIL ACTION NO. 13-122-DLB**

**WILLIAM HARDIN**                                                                          **PLAINTIFF**


**vs.**                          **MEMORANDUM OPINION AND ORDER**


**CAROLYN COLVIN, Acting**
**Commissioner of Social Security**                                        **DEFENDANT**

*** *** *** ***

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of

an administrative decision of the Commissioner of Social Security.  The Court, having

reviewed the record and the parties' dispositive motions, will affirm the Commissioner's

decision, as it is supported by substantial evidence.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2006, Plaintiff William Hardin filed an application for a Period of

Disability and Disability Insurance Benefits (DIB), alleging an onset date of December 17,

2002.  (TR 43, 123).  The date last insured (DLI) was March 31, 2008.  (TR 382).  Plaintiff's

applications were denied initially and again on reconsideration.  (TR 379).  After a June 9,

2008 hearing, Administrative Law Judge (ALJ) Andrew J. Chwalibog ruled that Plaintiff was

not entitled to benefits.  (TR 434).  The Appeals Council subsequently denied Plaintiff's

request for review.  (TR 446).  On August 11, 2009, United States Senior Judge G. Wix

Unthank reversed and remanded for further fact finding.  (TR 449).  On October 15, 2010,

after a second hearing, ALJ Chwalibog again ruled that Plaintiff was not entitled to benefits. (TR 380). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 6, 2013. (TR 369).

The present action was filed on November 1, 2013. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 9, 10).

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national

2

economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date through the DLI.  (TR 382).  At Step 2, the ALJ determined that Plaintiff had the following severe impairments: low back and neck pain due to mild degenerative disc disease.  *Id.*  Further, he determined that Plaintiff had non-severe shoulder problems, mental impairments, mild carpal tunnel syndrome, and cardiac condition.  *Id.*  At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 388).

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b), with the following limitations: limit standing/walking to six hours out of an eight-hour workday and sitting to six hours out of an eight-hour workday; no repetitive push/pull activities; occasionally climb ladders, ropes or scaffolds; no repetitive reaching overhead; avoid work at heights and hazzards; no commercial driving.  (TR 388-89).  Based upon the Plaintiff's RFC, the ALJ concluded that he was unable to perform any past relevant work.  (TR 394).

At Step 5, the ALJ determined that Plaintiff's could perform a significant number of jobs in the national economy.  *Id.*  He relied on the Vocational Expert's (VE) testimony that an individual with Plaintiff's profile and RFC could work as a hand packer (7,500 regional/

850,000 national jobs), a grader/sorter (3,000 regional/ 650,000 national jobs), an inspector (3,000 regional/ 650,000 national jobs), and as a system surveillance monitor (4,000 regional/ 500,000 national jobs).  (TR 395).  ALJ Chwalibog thus concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date (December 17, 2002) through the DLI (March 31, 2008).  (TR 396).

## C.   Analysis

Plaintiff raises three issues on appeal.  First, Plaintiff argues that the ALJ, in concluding that Plaintiff's mental impairment is not severe and in posing a hypothetical question to the VE, erred by relying on a consultative examination report obtained after the DLI.  (Doc. # 9 at 3-6).  Second, Plaintiff maintains that the ALJ failed to give "good reasons" for not crediting the opinion of a treating source, Dr. Kohari.  *Id.* at 6-9.  Third, Plaintiff contends that the ALJ impermissibly acted as his own medical expert.  *Id.* at 9-11.

### 1.   The ALJ properly considered Dr. Huffman's report

After the district court remanded this case, the ALJ referred Plaintiff for a mental consultative examination.  The examination was administered by Dr. Catherine Huffman on January 8, 2010.  (TR 524-33).  Plaintiff contends that the ALJ improperly relied on Dr. Huffman's 2010 report because it is not based on Plaintiff's pre-DLI conditions.  (Doc. # 9 at 3-6).

It is true that "evidence of disability obtained after the expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin.*, 88 F. App'x. 841, 845 (6th Cir. 2004).  However, an ALJ is not prohibited from considering such evidence.  *See DeVoll v. Comm'r of Soc.* Sec., 234 F.3d 1267, at *4 (6th Cir. 2000) (upholding an ALJ's finding that a claimant did not have a mental disability where the ALJ relied on an evaluation

4

performed after the insured period); *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir.1976) ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time."); 20 C.F.R. § 404.1520(a)(3) (stating that ALJs "will consider all evidence in your case record when we make a determination or decision whether you are disabled.")

On the facts of this case, it was proper for the ALJ to consider Dr. Huffman's report. When the ALJ referred Plaintiff to Dr. Huffman, there was no treatment or report in the record by a psychiatrist, psychologist, or counselor. (TR 386). Dr. Huffman is a licensed psychologist and counselor in mental health. (TR 386-87). Her evaluation took place five months after the district court remanded Plaintiff's case for further fact-finding. Based on its reasonable proximity to the DLI, and because of the insufficient evidence in the record, the ALJ properly considered Dr. Huffman's report. *See* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination . . . when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").

Further, and more importantly, Plaintiff overemphasizes how much the ALJ relied on Dr. Huffman's report. Plaintiff cites from the ALJ's decision and from a hypothetical question the ALJ posed to the VE in an attempt to show that the ALJ gave the report too much significance. However, Plaintiff's argument ignores what is most critical: in weighing Dr. Huffman's conclusion that Plaintiff had no medically determinable mental impairment (TR 386, 528) against Dr. Kohari's opinion that there was a mental impairment, the ALJ gave Plaintiff the "benefit[] of the doubt" and found "that [Plaintiff] does have a mental impairment." (TR 387). After rejecting Dr. Huffman's opinion that Plaintiff did not have a medically determinable mental impairment, the ALJ evaluated the severity of his

5

impairment using the "special technique" prescribed by 20 C.F.R. § 404.1520a.

A severe impairment is one which significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520©.  To determine if an impairment is severe, the ALJ must "rate the degree of functional limitation resulting from the impairment".  20 C.F.R. § 404.1520a(b).  An ALJ rates the degree of a claimant's functional limitation in four areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3).  The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more.  *Id.*  If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally considered not severe.  20 C.F.R. § 404.1520a(d)(1).

Based on Plaintiff's testimony from the June 2008 hearing, the ALJ determined that Plaintiff did not have a severe mental impairment.  (TR 387).  Contrary to Plaintiff's assertion, that conclusion is supported by substantial evidence.  First, the ALJ rated Plaintiff's degree of limitation in the activities of daily living as "mild" because he was able to do household chores and minor repairs around the house.  (TR 387, 32-33).  Second, the ALJ rated Plaintiff's limitation in social functioning as "mild" because he goes grocery shopping, attends church weekly, and testified he has no problems socializing. (*Id.*).  Third, he rated Plaintiff's limitation in concentration, persistence, and pace as "mild" because Plaintiff can concentrate long enough to read, watch the news, and do household chores and minor repairs.  (*Id.*).  Finally, the ALJ concluded that there is no evidence Plaintiff has

experienced episodes of decompensation.  The Court holds that this evidence is adequate to support the ALJ's conclusion that Plaintiff's mental impairment is not severe.

The ALJ also did not err in incorporating findings from Dr. Huffman's report when posing a hypothetical question to the VE.  (*Compare* TR 431, *with* TR 529).  Hypothetical questions to a VE "must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  As discussed above, it was proper for the ALJ to refer Plaintiff to Dr. Huffman and consider the results of her examination; therefore, it follows that he could use her findings in posing the hypothetical. And once again, Plaintiff overstates the ALJ's reliance on her report.   The ALJ's hypothetical gave the VE a complete picture of Plaintiff's limitations: it incorporated Plaintiff's age, education, experience, and RFC (*compare* TR 432, *with* TR 388-89), and was consistent with the ALJ's finding that Plaintiff's mental impairment is not severe.  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (holding that a hypothetical question need only reference a claimant's age, experience, education, and RFC).  For all these reasons, the ALJ did not err in considering Dr. Huffman's report.

### 2.    The ALJ gave good reasons for giving Dr. Kohari's medical assessment minimal weight

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  If an ALJ discounts a treating-source opinion, he must give "good reasons," which "must be supported by the evidence in the

case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted).

Plaintiff's treating source is Dr. Kohari.  (TR 394).  Dr. Kohari opined that Plaintiff suffered from anxiety and mild depression resulting from chronic pain syndrome and rated "poor" Plaintiff's ability to deal with work stresses and concentrate.  (TR 268).  The ALJ gave minimal weight to Dr. Kohari's opinion regarding Plaintiff's mental health.  (TR 394).  Plaintiff challenges that conclusion, and maintains that "Dr. Kohari's opinion as to the claimant's mental RFC is entitled to controlling weight."  (Doc. # 9 at 8).  Plaintiff takes issue with the ALJ's reliance on Dr. Huffman's report, and cites *Holland v. Massanari*, 152 F.Supp.2d 929, 936 (W.D. Tenn. 2001), in arguing that the ALJ can decline to give controlling weight to Dr. Kohari's opinion only if based on "other medical evidence."  (Doc. # 9 at 9).  Plaintiff further suggests that, in determining what weight to give Dr. Kohari's opinion, it is not appropriate for the ALJ to consider his lack of mental health training.

The ALJ provided several reasons why he gave Dr. Kohari's opinion only minimal weight.  First, Dr. Kohari's assessment of Plaintiff's mental capacity was done without any psychological testing.  (TR 393).  Second, Dr. Kohari's treatment records do not support his assessment.  *Id.*  Specifically, Dr. Kohari reported that Plaintiff's anxiety and depression were the result of chronic pain syndrome; yet, nowhere in Plaintiff's records does Dr. Kohari indicate that Plaintiff has severe chronic pain syndrome.  (TR 393, 268).  Dr. Kohari never referred Plaintiff to a mental health specialist and there is no indication that he prescribed Plaintiff antidepressant or anti-anxiety medication.  (TR 385, 394).  Third, Dr. Kohari's mental health assessment was based on Plaintiff's subjective complaints, not objective

8

testing.  (TR 269-70, 392).  Finally, Dr. Kohari is a family physician with no additional mental health training and without a specialization in psychiatry or psychology.  (TR 386, 393).

Contrary to Plaintiff's argument, the ALJ balanced the appropriate factors in determining what weight to give Dr. Kohari's opinion.  *Cole*, 661 F.3d at 937 (stating that an ALJ must balance, among other factors, the "supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source"); 20 C.F.R. § 404.1527(c)(3)-(5) (same); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) (holding that a treating physician's opinion was not entitled to deference because "it was based on [claimant's] subjective complaints, rather than objective medical data . . . is inconsistent with the record as whole and, arguably, not even supported by his own treatment notes").

The case Plaintiff cites, *Holland*, 152 F.Supp.2d 929, does not support his argument. In *Holland*, the court upheld the ALJ's decision to reject a treating physician's opinion because the opinion was inconsistent with the physician's medical notations.  *Id.* at 936-37. As discussed above, a similar situation is present here.  S*upra* at 8.  The ALJ gave good reasons, supported by the evidence, for giving Dr. Kohari's opinion minimal weight.

### 3.    The ALJ did not err in assigning Plaintiff a light RFC

The Sixth circuit has summarized an ALJ's role in determining a claimant's RFC as follows:

> The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.  This court has recognized that, under those regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity.  An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical

9

evidence before rendering an RFC finding.

*Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).  An ALJ considers several factors in determining a claimant's RFC, including "the medical evidence, non-medical evidence, and the claimant's credibility."  *Id.* at 443.

Plaintiff challenges the ALJ's consideration of Plaintiff's 2006 MRI and nerve conduction study.  (TR 212, 220, 384-85).  He asserts that the ALJ withheld this evidence from Dr. Stauffer (Doc. # 9 at 10), who performed a physical consultative examination on December 12, 2006.  In support, he cites to the following passage from Dr. Stauffer's medical source statement:

> The claimant has recently had nerve conduction velocity test in both upper and lower extremities as well as a recent MRI of his neck, but he did not know the results.  If *you* do not already have these, *I would think it would be helpful to obtain these results.*  He does have some decreased range of motion mostly involving his neck and he does have some significant pain in his shoulders when he does range of motion.

(TR 225).

The Court disagrees with Plaintiff's reading of Dr. Stauffer's statement.  Dr. Stauffer is not personally requesting the test results; rather, he appears to be suggesting that the ALJ obtain them.  The ALJ did obtain the evidence and was permitted to consider it in rendering his RFC finding.  Moreover, it does not seem that Dr. Stauffer required the test results.  He performed an examination of Plaintiff and provided the following assessment: he could occasionally lift 20 pounds; frequently lift 10 pounds; stand or walk 6 hours in an eight-hour day; sit six hours in an eight-hour day; probably push or pull; might have difficulty with climbing; and should do no commercial driving.  (TR 223-25).  The ALJ incorporated these findings into his decision.

The ALJ examined Plaintiff's testimony from the June 2008 hearing and concluded that his statements about the intensity and limiting effects of his symptoms were not credible.  (TR 391).  He noted that Plaintiff has never presented to Dr. Kohari with disabling pain, never been referred to a pain clinic or been prescribed pain medication beyond Motrin and Lortab, never been recommended for surgery, never worn a neck collar or back brace, and never completed a home exercise program or physical therapy.  (TR 390-93).  However, he can do household chores and repairs, and is able to squat and walk on his heels and toes.  (TR 32-33, 393).  This evidence supports the ALJ's determination that Plaintiff's allegations of chronic pain are only "fairly credible."  (TR 393).

The ALJ also rejected some of Dr. Kohari's opinions.  Plaintiff does not appear to challenge that decision (except as it relates to Dr. Kohari's opinions on Plaintiff's mental health, discussed *supra* at 7-9), but to the extent he does, the ALJ's conclusion was proper and he gave good reasons.  Specifically, the ALJ noted that Dr. Kohari's assessment is based only on Plaintiff's presentations, Dr. Kohari is not a vocational or rehabilitation specialist, and the limitations he suggested were inconsistent with the pain behaviors Plaintiff presented prior to the DLI.  (TR 392).

As discussed above, the ALJ's RFC finding largely mirrors Dr. Stauffer's assessment.  (TR 388, 392).  He found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), with the following limitations: limit standing/walking to six hours out of an eight-hour workday and sitting to six hours out of an eight-hour workday; no repetitive push/pull activities; occasionally climb ladders, ropes or scaffolds; no repetitive reaching overhead; avoid work at heights and hazzards; and no commercial driving.  (TR 388-89).  In adopting Dr. Stauffer's opinions, the Court concludes that the ALJ properly

discharged his duty as finder of fact and that there is substantial evidence to support his RFC assignment.

### III.  CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that:

(1)     The Commissioner's Motion for Summary Judgment (Doc. # 10) is hereby **GRANTED**;

(2)     Plaintiff's Motion for Summary Judgment (Doc. # 9) is hereby **DENIED**; and

(3)     A Judgment shall be entered contemporaneously with this opinion.

This 5th day of February, 2015.



Signed By:
_David L. Bunning_   *DB*
**United States District Judge**

G:\DATA\SocialSecurity\MOOs\Pikeville\7-13-122 Hardin MOO.wpd